THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents, *v.* THE EDEN MUSÉE AMERICAN COMPANY (Limited), Impleaded, etc., Appellant.

The provision of the New York City Consolidation Act (§ 1998, chap. 410, Laws of 1882, as amended by § 3, chap. 249, Laws of 1885), which provides for the licensing and regulation of places of amusement, includes all classes of public exhibitions such as are usually conducted upon a stage, for the observation and amusement of the public.

A place of public amusement where concerts are given upon a stage is within its terms and requires a license.

(Submitted June 15, 1886 ; decided June 25, 1886.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 21, 1886, which affirmed an order of Special Term restraining the defendant *pendente lite* from keeping open the place of entertainment in the city of New York known as the "Eden Musée," and from giving musical entertainments such as had been given therein, until a license shall be obtained therefor as provided by the Consolidation Act.

The nature of the entertainments given are stated in the opinion.

*George W. Seligman* for appellant. The musical performances in question did not constitute " entertainments of the stage." There is no stage, no scenery, no actors, no acting, in fact, nothing of the character of dramatic or theatrical representation. Nor can they be brought under the head of " inter-

ludes." (*Soc. for the Reformation of Juvenile Delinquents* v. *Diers*, 10 Abb. Pr. [N. S.] 221 ; Geary's Law of Theaters and Music Halls, 2, 3.) Musical performances and concerts are not included in a rational construction of the phrase " exhibitions of minstrelsy." (Consolidation Act, §§ 1998, 1999, 2000, 2003, 2005, 2010 ; Potter's Dwarris on Statutes, 193 ; *Clark* v. *City of Utica*, 8 Barb. 453 ; *Waller* v. *Harris*, 20 Wend. 561-2 ; *In re Will of O'Neil*, 91 N. Y. 520 ; *Maillard* v. *Lawrence*, 16 How. [U. S.] 261 ; *U. S.* v. *Clayton*, 2 Dill. 225 ; *Engelkin* v. *Van Waind*, 26 Tex. 471 ; People's Cyclopædia, N. Y., 1879.) Statutes in derogation of common-law rights should be construed with strictness in favor of the persons against whom they are sought to be applied. (*Rowland* v. *Kleeber*, 1 Pittsb. 68 ; *Burnside* v. *Whitney*, 21 N. Y. 148 ; *Shaw* v. *Ruddin*, 9 I. R. C. L. 214 ; *Sewell* v. *Jones*, 9 Pick. 412, 414 ; *Green* v. *Holway*, 101 Mass. 243, 248 ; *Queen* v. *Barclay*, 8 L. R., Q. B. Div. 306, 312 ; *Oriental Bk. Corp.* v. *Wright*, 5 L. R. App. Cas. 842, 856 ; Sedg. on Const. [2d ed.] 224.) The sections of the " Consolidation Act " under discussion are highly penal, and should, on that account alone, if on no other, receive a restricted construction. (Potter's Dwarris on Statutes, 245, 247 ; *Bell* v. *Dole*, 11 Johns. 173 ; *Strong* v. *Stebbins*, 5 Cow. 212 ; *Myers* v. *Foster*, 6 id. 569 ; *Hasbrook* v. *Paddock*, 1 Barb. 642 ; *Bridgewater, etc., Co.* v. *Robbins*, 22 id. 667 ; *Hall* v. *Sigel*, 13 Abb. Pr. [N. S.] 178, 187 ; affirmed, 53 N. Y. 607 ; *Carpenter* v. *People*, 8 Barb. 605 ; *Mayor, etc.,* v. *Walker*, 4 E. D. S. 258 ; *King* v. *Handy*, 6 T. R. 286 ; *U. S. v. Watts*, 1 Band. 580.)

*David J. Dean* for respondent. The language used in section 1999 of the New York City Consolidation Act (Laws of 1882, chap. 410) includes every thing which ordinarily goes to make up a concert, and it is a reasonable construction of the statute to say that it was intended to include all entertainments or exhibitions the purpose and effect of which is to attract the public. (Laws of 1860, chap. 475, p. 999 ; *Society, etc.,* v. *Diers*, 60 Barb. 152 ; Jacob's Law Dict. 287 ; Webster's Dict., 1875 ;

Worcester's Dict., 1874; Stornmouth's Dict., 1885 ; Worcester's Dict., 1885.)

FINCH, J.  The Consolidation Act of 1882, as amended in 1885, under the head of " Amusements," contains provisions for their license and regulation.  Section 1998 enacts that " it shall not be lawful to exhibit to the public, in any building, garden or grounds, concert-room or other place or room within the city, any interlude, tragedy, comedy, opera, ballet, play, farce, minstrelsy or dancing, or any other entertainment of the stage, or any part or parts therein, or any equestrian, circus or dramatic performance, or any performance of jugglers or rope dancing or acrobats, until a license for the place of such exhibition for such purpose shall have been first had and obtained."  The Eden Musée has been in the habit of giving public concerts, which its counsel describe as " consisting of orchestral selections of a high character in a room or alcove which opens at an elevation into a larger room or hall and is on a level with a high gallery encircling said hall."  This carefully drawn circumlocution avoids saying that the entertainment is upon a " stage," but the difference is rather in the language than the fact.  The proof shows that the place is one of public amusement to which visitors are attracted by the entertainment offered, to which an admission is charged and which anybody may attend upon payment of the price.  It is a private enterprise, planned and accomplished for personal gain and profit, like other places of public amusement seeking the public patronage.  Without doubt it belongs to the general class of cases contemplated by the statute as needing more or less of governmental supervision and regulation, and so required to pay a license fee.

It is claimed, however, that it is neither an " entertainment of the stage," nor an exhibition of " minstrelsy," and thus not within the language of the statute, but is merely a concert, not named or included within the section referred to.  The appellant's counsel traces to their origin what were known as minstrels, insisting that they were " strolling singers and

musicians" wandering about the country, and "not to be con-
founded with the musical artist or with the performer in an
orchestra having a fixed abode or domicile." Even if the test
of difference between "minstrel" and "musician" was that
one strolled and the other stayed at home, that one was a
vagabond and the other a citizen, it is certain that the word
"minstrelsy" has acquired a much wider meaning and is used
in the statute in that broader sense. The act of 1862 was con-
fined to "negro minstrelsy," a phrase which designated a known
and specific kind of musical entertainment, and so made that
and the opera the subjects of license regulations to the exclu-
sion of what may be called concerts. But by the act of 1872
the word "negro" was dropped and the word "minstrelsy"
purposely left to its broad and general meaning, without any
qualifying or restrictive expression. It was as if the legislature
had declared that instead of limiting the regulation to one sort
or kind of "minstrelsy," it should thereafter apply to all sorts
and kinds without limitation. So broad was the act that in 1875
the legislature deemed it necessary to specially except from its
operation private theatricals and church and Sunday-school
exhibitions and the like. The phrase "any other entertain-
ment of the stage" is also very broad and comprehensive.
Theatrical and operatic performances, minstrelsy and dancing,
had already been specifically named, and "any *other* entertain-
ment of the stage" implied that there were others to be
included. Was it meant that a boxing match on the stage of
a place of public amusement did not need regulation and
license, while an opera or a tragedy did? Taking the statute
in all its terms it evidently meant to include all classes of pub-
lic exhibitions such as are usually conducted upon a stage for
the observation and amusement of the public, and we see no
good reason for narrowing or restricting its obvious scope and
purpose.

The order should be affirmed, with costs.

All concur.

Order affirmed.