OPINION OF THE COURT
Lucille Polk Buell, J.
In an action for a declaratory judgment, a permanent injunction and specific performance, plaintiffs move for summary judgment and defendants cross-move for summary judgment.
Plaintiffs Raymond Massagli and Alba Massagli, husband and wife, ages 66 and 62, respectively, reside together at the Amberlands Apartment Complex (hereinafter Amberlands) in the Town of Cortlandt. Plaintiff Raymond Massagli also allegedly suffers from numerous health problems and is allegedly disabled and unable to work. Amberlands is owned by defendant Baltic Estates, Inc. (hereinafter Baltic) whose president is defendant Jonas Bastys.
The Massaglis entered into a lease with Baltic on July 25, 1978 for a term of two years commencing September 1, 1978 and ending August 31, 1980. Extensions of the lease were given through August 31, 1984.
On June 2, 1984, the Massaglis were sent a letter of nonrenewal. The stated reason for nonrenewal was plaintiffs’ record *359 of nonpayment of taxes due. A one-year extension of the Massaglis’ lease was negotiated, said lease term to expire on August 31, 1985.
Baltic sent the Massaglis a notice of termination dated April 26,1985 advising that the lease would not be renewed at its expiration on August 31, 1985. By a notice of petition and petition dated November 15, 1985, Baltic commenced a summary proceeding in the Town Court, Town of Cortlandt, to recover possession of the subject leased property.
By order of this court entered February 3, 1986, plaintiffs were granted a preliminary injunction staying defendants and their agents from pursuing or taking any further action regarding the summary proceeding pending further order of this court.
By order of this court entered December 16, 1987, plaintiffs were directed to join the Town of Cortlandt as a necessary party defendant to this action.
Plaintiffs contend that pursuant to the terms of a contract set forth as a memorandum of understanding (hereinafter Memorandum) effective August 19, 1980, between the Town Board of the Town of Cortlandt and defendant Bastys and another landlord, defendants are bound to renew plaintiffs’ lease unless plaintiffs failed to pay rent, damaged the property or participated in clearly objectionable behavior. Plaintiffs contend that they are third-party beneficiaries of that Memorandum and that inasmuch as defendants have set forth no reasons for refusing to renew their lease on the petition commencing the summary proceeding, they are entitled to a new lease or lease renewal.
Defendants deny that the Memorandum is a contract, contending that it is unenforceable and that plaintiffs therefore cannot be third-party beneficiaries of that document and are not entitled to a lease renewal.
The history of the Memorandum, as recited therein, is essentially as follows:
1. The Town Board of the Town of Cortlandt was petitioned in March of 1980 by the Cortlandt Tenant’s Committee to adopt the State law known as the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) (hereinafter ETPA).
2. The Supervisor of the Town of Cortlandt in response to the above-cited petition appointed a Tenant-Landlord Advisory Committee.
3. Said Committee met on numerous occasions and further *360 met with the two major landlords of the Town of Cortlandt, "Mitchell Berensen, owner of Springvale Apartments and Jonas Bastys, owner of Amberland Apartments”.
4. Said Committee submitted a written report which was accepted by the Town Board in the form of Resolution No. 245-80, dated August 19, 1980.
5. The report resulted in the subject Memorandum.
Relevant paragraphs of the Memorandum are as follows:
"1. That the policy of the Town Board of the Town of Cortlandt at this time is not to adopt the Emergency Tenants Protection Act of 1974 given the present circumstances of the housing market and vacancy rate and the understandings reflected in this Memorandum. * * *
"5. Tenants be given the option of one or two year leases.
"6. Lease renewals to be denied only in writing and only for one or more of the following reasons: (1) nonpayment of rent, (2) damage to property, or (3) behavior which is clearly objectionable to other tenants.”
The Memorandum was extended on February 26, 1985.
The court finds that there are no material, triable issues of fact.
Initially, the parties dispute whether defendant town had the power to enter into the Memorandum with the other defendants.
Towns and villages, as creatures of the State, may exercise only those powers specifically delegated to them by the State (see, Wells v Town of Salina, 119 NY 280 [1890]). However, although a municipality cannot govern beyond the scope of the power the State has granted it, this power may be conferred expressly or by necessary implication (see, Bee Line v Nickerson, 60 Misc 2d 931, 939 [Sup Ct, Nassau County 1969]). NY Constitution, article IX, § 2 (c) (ii) (10) grants power to the local governments to provide for order, conduct, safety, health and well-being of persons or property therein. In 1963 the New York State Constitution was amended to provide that "[r]ights, powers, privileges and immunities granted to local governments by this article shall be liberally construed” (NY Const, art IX, § 3 [c]).
A general grant of power is derived from Town Law § 64 (23) which grants towns all powers conferred upon the town and such additional powers as shall be necessarily implied therefrom. "It is well settled that a village or town is not *361 restricted to the exercise of its specifically granted powers but possesses also such powers 'as are necessarily incident to, or may fairly be implied from, those powers, including all that are essential to the * * * object of its existence’ ” (New York Trap Rock Corp. v Town of Clarkstown, 299 NY 77, 86 [1949]). The power to contract may be implied where the Town of Cortlandt has recognized the scarcity of adequate housing at affordable prices and has taken this step to promote the public welfare.
The town is given the express authority to award and execute town contracts (Town Law § 64 [6]). This section empowers towns to award contracts and execute same by the town supervisor. It has long been recognized that towns as corporations may make such contracts as may be necessary to the exercise of their corporate or administrative powers (see, Lorillard v Town of Monroe, 11 NY 392 [1854]).
Section 130 of the Town Law states in pertinent part: ''The town board after a public hearing may enact, amend and repeal ordinances, rules and regulations not inconsistent with law, for the following purposes in addition to such other purposes as may be contemplated by the provisions of this chapter or other laws.”
Section 130 (15) of the Town Law provides that among these purposes is the promotion of general welfare, "[promoting the health, safety, morals or general welfare of the community, including the protection and preservation of the property of the town and its inhabitants, and of peace and good order, the benefit of trade and all other matters related thereto, insofar as the same shall not be inconsistent with existing law.”
In the instant case, the town adopted Resolution No. 245-80 which recites that the supervisor appointed a Landlord/Tenant Advisory Committee to deal with rental housing problems in Cortlandt. The Committee submitted recommendations which were adopted by the resolution "that the Town Attorney be hereby authorized to prepare a 'Memorandum of Understanding’ pertaining thereto, and the Supervisor is hereby authorized to sign said memorandum on behalf of the Town.”
The court finds that the town had the power to enter into the subject Memorandum.
The next issue to be addressed is whether the Memorandum is preempted by the ETPA.
NY Constitution, article IX, § 2 (c) prohibits a municipality *362 from enacting legislation which is inconsistent with State legislation. A municipality is preempted from enacting legislation where the State’s legislation demonstrates a purpose to occupy the field (see, Robin v Incorporated Vil. of Hempstead, 30 NY2d 347, 350-351 [1972]; Builders’ Council v City of Yonkers, 106 Misc 2d 700, 701 [Sup Ct, Westchester County 1979], affd 79 AD2d 696 [2d Dept 1980]). "The intent to preempt may be deduced from an elaborate statutory scheme or from general State policy” (Matter of Marcus v Baron, 84 AD2d 118, 124-125 [2d Dept 1981], revd on other grounds 57 NY2d 863 [1982]).
Although the ETPA is elaborate, as conceded by plaintiffs, it is also voluntary. It is only if the legislative body of the City of New York or any city, town or village of Nassau, Westchester or Rockland County declares an emergency and adopts the ETPA will its provisions be effective within that local municipality (ETPA §§ 3, 14). Inasmuch as the ETPA is voluntary, this demonstrates a State intention not to preempt the field.
In addition, the Memorandum, mutually assented to by defendants, may be a contract (see, discussion infra) but it is clearly not legislation. The preemption doctrine pertains to local legislation, not contracts. Defendants have not demonstrated that the right of a town to contract is preempted by State law.
Furthermore, even if the Memorandum were deemed to be legislation, it is established that a municipality has broad "power to adopt and amend local laws for the protection, safety, health and general welfare of its inhabitants, subject to the limitations that they shall not be inconsistent with nor contravene the laws of the State, and that they bear a reasonable relation to the objective sought to be achieved” (Dibble v Town of Ripley, 124 Misc 2d 951, 952-953 [Sup Ct, Chautauqua County 1984]). The mere fact that local law touches upon the same matter as State legislation does not in and of itself render it invalid on preemption grounds (see, Dougal v County of Suffolk, 102 AD2d 531 [2d Dept 1984], affd 65 NY2d 668 [1985]).
The court finds that the preemption doctrine is inapplicable at bar.
Finally, the issues remaining are whether the Memorandum is an enforceable contract and whether plaintiffs are third-party beneficiaries of the Memorandum.
If the Memorandum is to be considered a binding agreement *363 it must have the basic essential elements of an agreement or contract. It has been held that a valid contract requires a person able to contract, a person able to be contracted with, a thing to be contracted for, a sufficient consideration, clear and explicit words to express the agreement and the assent of both contracting parties (see, Justice v Lang, 42 NY 493, 497 [1870]).
It is evident from the Memorandum that defendant Bastys, representing defendant Baltic, and defendant town agreed upon the terms of the document which they signed. The terms are clearly enumerated and executed by each party.
The promises and the consideration are plainly stated. The Town of Cortlandt agreed to forbear from adopting the ETPA. In consideration for the town’s forbearance the named landlords within the contract agreed to follow stipulated rental guidelines and certain specifically enumerated terms regarding lease renewals. The terms of the contract show the landlord’s fear of the town’s adoption of the ETPA which would impose upon the landlords a broader regulatory scheme. The landlords were willing to make certain concessions if the town would forbear from adopting the ETPA. The town in the interest of the general welfare of its citizens as well as the landlords agreed to enter into this contract.
The court finds from a reading of the Memorandum that all of the parties agreed to all of the essential terms, that there was a meeting of the minds and that the Memorandum must therefore be considered a binding agreement.
That the town and the other defendants now maintain that the Memorandum was not a contract is of no import (see, Hotchkiss v National City Bank, 200 F 287, 293 [SD NY 1911], affd 201 F 664 [2d Cir 1912], affd National City Bank v Hotchkiss, 231 US 50 [1913]).
With respect to whether plaintiffs are third-party beneficiaries of the contract, it is well settled " 'that [where] a promise [is] made to one for the benefit of another, he for whose benefit it is made may bring an action for its breach’ ” (Lawrence v Fox, 20 NY 268, 274 [1859]). A party must show that the intent of the contracting parties is to benefit him; otherwise "he is simply an incidental beneficiary and has no right of recovery” (Bonwell v Stone, 128 AD2d 1013, 1014 [3d Dept 1987]).
Plaintiffs establish that the Town of Cortlandt exacted a promise from defendant Bastys for performance not just to the *364 plaintiffs herein, but for all those who are tenants of the defendant’s property, Amberlands. The town in exercising its governmental function of providing for and benefiting the general health and welfare of its citizens entered into this contract with the intention of benefiting its citizens.
In the case at bar the plaintiffs are a member of the class sought to be protected and are entitled to maintain suit against defendant. Moreover, the performance of the contract is to be rendered directly to the tenants of Amberlands. Plaintiffs as tenants of Amberlands are third-party beneficiaries of the Memorandum.
Plaintiffs are granted a declaratory judgment that under the terms of the contract of August 19, 1980, plaintiffs may not be denied a lease renewal except for one of the reasons enumerated in the contract; that pursuant to paragraphs 5 and 6 of the contract, the letter of April 26, 1985 is ineffective to terminate plaintiffs’ tenancy or to give notice of nonrenewal of their lease; that pursuant to paragraphs 5 and 6 of said contract that a notice which purports to terminate plaintiffs’ tenancy or to give notice not to renew their lease, but which does not allege the grounds for said termination is insufficient in law to terminate their tenancy or not renew their lease; that pursuant to said contract, a petition to recover possession of plaintiffs’ apartment which does not comply with said contract is insufficient in law to terminate plaintiffs’ tenancy; and that plaintiffs are entitled to a lease renewal commencing on September 1, 1985.
Plaintiffs are granted an injunction enjoining defendants Jonas Bastys and Baltic Estates, Inc. from pursuing the summary proceeding to recover possession of plaintiffs’ apartment commenced by notice of petition and petition dated November 15, 1985, which does not specify the grounds for termination or nonrenewal. Defendants Jonas Bastys and Baltic Estates, Inc. are directed to perform the terms of said contract by making, executing and delivering to plaintiffs a lease for the period of two years commencing on September 1, 1985 in accordance with all the terms of said contract.
Plaintiffs’ request for attorneys’ fees, costs and disbursements is denied.
Plaintiffs’ motion for summary judgment is granted to the extent indicated.
Defendants’ cross motion for summary judgment is denied.